[No. 40451.    Department One.    June 19, 1969.]

THE STATE OF WASHINGTON, *Respondent*, v. WESLEY E. STAMBACH, *Appellant*.*

*Reported in 456 P.2d 362.

*Houger, Garvey & Schubert,* by *Kenneth L. Schubert, Jr.,* for appellant (appointed counsel for appeal).

*Charles O. Carroll* and *James B. Gorham,* for respondent.

ENNIS, J.†—Wesley E. Stambach was convicted of grand larceny as a result of his participation in the robbery of a hobby shop in Auburn, Washington on August 28, 1967. From his conviction and sentence based on the jury's verdict, he has appealed. Defendant's defense was alibi. He and another witness testified that he was in Kellogg, Idaho on August 28, 1967 when the robbery occurred.

By way of rebuttal the prosecution called two witnesses, Kay Bengstron and her sister, Sandra Maas, who testified that they had seen appellant in the Auburn area on August 28th, specifically, in the Tug Tavern in White Center. At the trial, defendant objected to the calling of these two witnesses upon the ground that they were not named in the prosecution's list of witnesses. The trial court allowed them to testify. Defendant claimed surprise and at the end of the trial made a motion for new trial based on this ground. The motion was denied. Defendant assigns error to both of these rulings. After the two witnesses testified, defendant offered his own testimony in surrebuttal. The trial court refused to allow defense counsel to recall defendant and error is also assigned to this refusal.

Defendant contends that the two witnesses called in rebuttal were actually part of the state's case in chief, and the state's failure to list them should have barred their testimony.

Had the prosecution called these witnesses in its case in chief, their testimony would have been objectionable as immaterial and irrelevant, for mere testimony that defendant was seen in the Tug Tavern on August 28th does

†Judge Ennis is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

not tend to prove that he robbed a hobby shop in Auburn. Such testimony, however, does tend to prove that defendant was not in Idaho on August 28th.

In our opinion this testimony was clearly rebuttal evidence. The prosecution is not required to anticipate the defense the accused will employ and to list witnesses to be used in rebuttal. In *State v. Niblack*, 74 Wn.2d 200, 443 P.2d 809 (1968), we said at 203:

> We are cited no authority for the proposition that the prosecutor must anticipate the evidence which a defendant will offer in support of his affirmative defenses and tender a list of the witnesses which it will call to rebut that evidence, nor are we given a rationale to support such a rule.

In his brief defendant relies on *State v. Willis*, 37 Wn.2d 274, 223 P.2d 453 (1950) as authority for his contention that the prosecution must give the names of prospective witnesses to defense counsel so as to protect against surprise. This is, of course, the general rule. However, in that case the witnesses sought to be called were part of the state's case in chief as distinguished from rebuttal witnesses.

After the state rested, counsel for defendant sought to recall defendant by way of surrebuttal. The court, on its own initiative, would not allow defendant to testify further.

At this point it may be mentioned that defendant's testimony had been long and voluble. The first few questions asked him unleashed a flood of well-nigh interminable narration which traced his life, nearly day by day from age 16 to the time he was arrested on the present charge.

Upon the court's refusal of surrebuttal, defense counsel made an offer of proof. If allowed to resume the stand, defendant would testify that he was in the Tug Tavern on the 8th of August at which time he saw, and was seen by, Sandra Maas and her sister, Kay Bengstron. The reason he had not previously supplied this information was because, on cross-examination, the prosecution had only asked him to list the taverns he had visited on the 7th. He named seven, but did not mention the Tug Tavern. He asserts, in

his offer of proof, that had the prosecutor asked him to list the taverns visited on the 8th of August, the Tug Tavern would have been included. And, it was there, on that day, that Sandra Maas and Kay Bengstron had seen him. This fact, defense counsel argues, would support the theory that the two girls were mistaken as to the date on which they had seen the defendant in the Tug Tavern. They had seen him, not on the 28th, but on the 8th, of August.

■ The rule on surrebuttal is found in *State v. Godwin,* 136 Wash. 582, 240 P. 897 (1925) at 587-88:

"Evidence offered in a trial on the stage of surrebuttal may, like that offered on rebuttal, be divided into two classes: (1) evidence strictly in surrebuttal, and (2) evidence not strictly in surrebuttal.

"2. Evidence Strictly in Surrebuttal.—A defendant is entitled as of right to put in evidence strictly in surrebuttal after the complainant has closed his case on rebuttal. Thus for instance, evidence to impeach the credibility of witnesses testifying on rebuttal, or to sustain the credibility of witnesses attacked on rebuttal, is admissible on surrebuttal.

"3. Evidence Not Strictly in Surrebuttal.—Admission as Matter of Right.—A defendant, however, is not entitled as of right to put in on the stage of surrebuttal evidence not strictly surrebutting, but merely cumulative or confirmatory. Nor is he entitled to put in at that stage evidence on an essential point whereon he failed to give evidence on his original case.

"Admission as Matter of Discretion.—In every case, however, the admission or rejection of such evidence on the stage of surrebuttal is addressed wholly to the sound discretion of the trial court."

The heart of the matter is found in the trial court's remark when he forbade surrebuttal:

The question is not where he was on the 7th, not where he was on the 8th, but where he was on the 28th.

Had the defendant been allowed to resume the stand he would have simply said again what he said before. He would have said that the prosecution's witnesses were wrong. Counsel argues strenuously in support of the proposition that the presence of his client in the Tug Tavern on

August 8th is not merely cumulative or confirmatory, but is new and true rebuttal. We cannot agree. To say, "you didn't see me on the 28th, you saw me on the 8th" is simple contradiction. Defendant had already testified that he was in Idaho on August 28th. The sisters say he was not. He may not on surrebuttal say, "Yes, I was too, in Idaho."

Moreover, these witnesses were cross-examined on the point and though neither could fix the exact date on which they had seen Stambach, both placed it after August 8th.

The fact that he may have been in the Tug Tavern on August 8th seems of little significance to us. This seems particularly true in that the testimony of Detective Crider discloses that Sandra Maas called him and reported to him on August 28th that she had seen the defendant in the tavern that day. Detective Crider was able, with exactitude, to establish the 28th as the date of the telephone call.

Nor, can defendant's offered testimony be construed as impeachment. Had he offered to show, with surrebuttal evidence, that the two sisters were not themselves in White Center on the day in question, such evidence would have been impeaching and true surrebuttal. Mere contradiction by a party who has already testified to the contrary is not impeachment such as to justify surrebuttal.

In the instant case, the defense was granted a short recess during which time defense counsel learned the names of the two female witnesses and the testimony they were to present. He also learned that defendant was acquainted with these witnesses, and contends, on appeal, that had defendant been allowed to testify in surrebuttal he could attack them as to their reputation for truth and veracity in the community.

Defense counsel, in his cross-examination of these witnesses, learned that one of them had never been convicted of a crime. He did not ask this of the other. Nor, did he inquire as to any matter touching on their character. When defendant sought to take the stand in surrebuttal his offer of proof contained nothing attacking or touching on the character of these witnesses.

In *State v. Hoggatt*, 38 Wn.2d 932, 234 P.2d 495 (1951) we ruled at 935-36:

> Ordinarily, the character or reputation of a witness is not an issue in a case, nor is it material with whom he may have associated. If, however, a party desires to impeach a witness, either by cross-examination or by showing what is his general reputation, and objection is made thereto, it is incumbent upon the examiner of the witness to disclose to the court what he expects to prove, so the court may determine whether such witness should be subjected to impeachment. He may have traits of character which a trier of fact might regard as affecting his credibility as a witness. If the court is informed as to what it is claimed they are, it is in a position to determine whether reputation in the particular respect would bear on credibility and exercise its discretion, which will not be disturbed by an appellate court unless it can be said there has been a clear abuse thereof.

Since defendant made no offer of proof concerning the character of the witnesses, the trial court was never afforded an opportunity to exercise its discretion and therefore cannot be said to have abused it.

The entire question of whether or not to allow defendant to resume the stand in surrebuttal was within the trial court's discretion. We hold that this discretion was not abused.

The judgment is affirmed.

HUNTER, C. J., FINLEY, WEAVER, and HAMILTON, JJ., concur.