[No. 1127-2.    Division Two.    December 26, 1974.]

THE STATE OF WASHINGTON, *Respondent*, v. ALEATHA ANN HARRIS, *Appellant*.

Thomas G. Krilich and Lee, Krilich, Lowry & Thompson, for appellant.

Ronald L. Hendry, Prosecuting Attorney, and Joseph D. Mladinov, Special Counsel, for respondent.

PETRIE, J.—The defendant was convicted by jury verdict of the crime of second-degree murder. Her appeal asserts that the trial court erred (1) by failure to grant a mistrial after repeated audience outbursts; (2) by refusing to permit her, on surrebuttal, to present details of a prior violent encounter she had with the murder victim's older sister; and (3) by improperly instructing the jury on her theory of the defense of justifiable homicide.

We consider first the defendant's contention that audience disruptions created an atmosphere which demanded a mistrial. Both the defendant and the victim were female members of the same minority race. The nature of the charge and the circumstances surrounding the event attracted a more than ordinary interest in and attendance at the trial. The presence of divided factions, seemingly quite separated in the courtroom, was noted by the senior judge who presided at trial. On his own initiative, on the second day of trial, the judge admonished the audience to remain silent after detecting murmuring and laughter in the courtroom.

Later in the trial, and during cross-examination of a defense witness, the court again detected continued laughter following an exchange between the prosecutor and the defense witness. At that point, the following occurred:

THE COURT: I think that the members, people in the back of the room now, some of you may not have heard what I said this noon. If there is any more interruption

or audience reaction to the testimony, I am going to clear the courtroom and just leave enough people in here so that we have a legal public trial, and that will leave about six people. This is within my powers. I believe it. If we get any more disturbance or visible reaction from those in attendance, I will have to send you all out. We can't have this kind of pressure being put on the witnesses or the Jury.

. . .

MR. KRILICH: At this point for the record, I would make a motion for a mistrial. The fact is the audience has reacted adversely, not to this occasion, but on other occasions to testimony offered by defense witnesses, and I feel that audience reaction can't help but have an effect on the Jury.

THE COURT: I will deny the motion because the audience reaction has also been directed to some of the State's witnesses.

But, the Jury please disregard the disturbances. They are not great, but they are coming from the spectators.

This is not a Roman circus. This is one of the most serious things that society provides by way of a service for people who are in conflict, either among themselves or with the State as in this case. Levity is not appropriate.

All right, proceed.

A trial court is vested with wide discretion to take such measures as are reasonably necessary to conduct a trial with dignity, decorum and dispatch, and to maintain an aura of impartiality. *State v. Johnson*, 77 Wn.2d 423, 462 P.2d 933 (1969). However, when a series of untoward and even unpreventable events unfairly affect the atmosphere of a trial to the extent that a defendant is deprived of those essentials of substantive due process requisite under our system of jurisprudence, a mistrial is in order. *State v. Swenson*, 62 Wn.2d 259, 382 P.2d 614 (1963).

We will not attempt to summarize the "quantum of irregularities" which the court considered in *Swenson* to reach its conclusion that substantive due process had been denied to the defendant therein. However, it is apparent from the opinion that the court considered, as vital points,

the several emotional collapses of a key prosecution witness, the trial judge's apparent solicitude for her welfare, together with repeated audience outbursts subjecting defense counsel to unwarranted and totally offensive obloquy. The totality of those irregularities deprived the defendant of effective cross-examination of the most essential prosecution witness. By contrast, audience reaction in the case at bench was limited to occasional murmuring and outbursts of laughter which appear to have been directed toward witnesses presented by both prosecution and defense. The trial judge, who was able to visually evaluate the impact of these disturbances on the jurors, concluded that the jury was not unduly affected by them. The cumulative effect of these outbursts did not seem to deprive the accused of her right of due process and therefore, is not grounds for reversal. A defendant is entitled to a fair trial but not to a perfect trial. *Bruton v. United States*, 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620 (1968); *State v. Schrager*, 74 Wn.2d 75, 82, 442 P.2d 1004 (1968).

We turn, next, to the question of whether or not the defendant was denied a fair trial because the trial court curtailed testimony on surrebuttal. Some factual background is necessary to place this issue in proper perspective.

The charge against Miss Harris is that in the wee hours of March 11, 1973, she shot and killed Dora Chikagi Shannon, thus terminating a scuffle between the two women. In her case-in-chief Miss Harris introduced evidence of a prior fight between herself and the victim's older sister which occurred on January 8, 1973. The defendant testified that the March incident occurred because Chikagi knew of and was "mad about" the January affair, "Because [in January] her sister pulled a gun on me, and I cut her with a knife." On cross-examination, when asked whether or not in January she struck the victim's sister over the head with a beer bottle, she replied, "When she pulled a gun on me, I did."

The prosecution's only rebuttal evidence referred exclusively and in some detail to the January episode between Miss Harris and the murder victim's sister. Two witnesses described a different version of the January fight than had been related by Miss Harris in her case-in-chief. Without objection, these witnesses described in detail how the January fight started, together with the continuation of the battle, and its apparent termination.

In an attempt at surrebuttal, counsel for defendant called Miss Harris as a witness, prefacing his questions by a statement to the court:

It may be open to an objection for being repetitive and cumulative as she will testify, but I will again recall Aleatha Harris.

After asking two preliminary questions about the January incident, defendant's counsel asked her when and where she first saw the victim's sister on the night of the January encounter. The prosecutor objected on the ground that the matter being pursued was repetitive and not proper surrebuttal. The trial court sustained the objection with the following comment about testimony describing the January affair:

Who is telling the truth about it and what the true facts are doesn't make any difference. It is in only for the purpose of demonstrating what now is quite evident, and I am sure I am not commenting unfairly on the evidence; that there was hard feelings between the defendant and the Shannon family. So, with that, I will sustain the objection.

Counsel made no specific offer of proof but it is apparent both from the record and from the brief that the defendant was seeking the right to present the *details* of the January event to the same extent that the prosecution witnesses had presented them in rebuttal. She had that right to present details, insofar as those details had a reasonable relationship to her state of mind in March, in her case-in-chief. She did not have the same right on surrebuttal.

■ Simply stated, the function of surrebuttal is to rebut the rebuttal. For example, as a matter of right, the defendant in a criminal matter may impeach the credibility of the State's rebuttal witnesses or rehabilitate his own witnesses whose credibility has been attacked by the prosecution's rebuttal evidence. It is not the function of surrebuttal to provide the defendant an opportunity to present evidence cumulative or confirmatory of that which has been, or ought to have been, presented in his case-in-chief. *State v. Stambach*, 76 Wn.2d 298, 456 P.2d 362 (1969). Cumulative or confirmatory evidence is admissible on surrebuttal solely at the discretion of the trial court.

In the case at bench, the only reason for admitting evidence of the January affair was to establish the defendant's state of mind as being one of grave apprehension when encountering the victim or a member of her family in a confrontation situation. The trial court properly categorized it as demonstrating "hard feelings between the defendant and the Shannon family." Clearly, it was the defendant's responsibility to present her state of apprehension as part of her case-in-chief. Whether or not she could pursue that specific matter in detail on surrebuttal was clearly within the discretionary authority of the trial court. We find no abuse of that discretion.

■ Within the framework of this assignment of error the defendant appears to contend, also, that permitting the prosecution's rebuttal evidence to stand as the last word on the subject of the January incident arbitrarily portrays the defendant as a wantonly aggressive, vicious and violent person who was spoiling for a fight, without affording her an opportunity to negate that portrayal. That theory of pursuing the matter on surrebuttal was not presented to the trial court; nor indeed, was any offer of proof presented to the trial court. No abuse of discretion can be urged when the trial court has not been apprised of the reason now advanced for wanting to pursue the issue. If, as a matter of trial tactics, the defendant permitted the State to present,

purposely without objection, some of the details concerning the initiation and termination of the January affair, she pursued a dangerous course which, at the very least, ought to have been clearly brought to the attention of the trial court. We can find no abuse of discretion in the trial court's limitation of the presentation of evidence on surrebuttal.

This brings us to the defendant's third assignment of error. Miss Harris contends that she was denied a fair trial because, under the instructions given to the jury, she was not able effectively to present her defense that she justifiably shot at and mortally wounded Dora Chikagi Shannon on March 11, 1973.

■ Neither the statement of facts nor the supplemental statement of facts complies with CAROA 34(9) because neither of them include "*all* of the instructions given by the court" nor do they include "those proposed instructions concerning which error is assigned." We cannot, therefore, review assignments of error challenging instructions given or refused. *Barnes v. Central Wash. Deaconess Hosp., Inc.*, 5 Wn. App. 13, 485 P.2d 85 (1971); *State v. Myers*, 6 Wn. App. 557, 494 P.2d 1015 (1972).

Judgment affirmed.

PEARSON, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied February 24, 1975.